## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PATRICIA FENNER, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | |
| **VERSUS** | **NO. 14-1395** |
| **ELITE TRANSPORTATION** | **SECTION "E" (3)** |
| **GROUP, INC., ET AL.,** | |
| **Defendants** | |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants William Gilfoil and the Louisiana Farm Bureau Insurance Company (collectively, "Gilfoil").[1] The motion is opposed by Defendants Elite Transportation Group, Inc.; Elite Transportation, Calex Express, Inc.; Elite Transportation Risk Retention Group, Inc.; and Robert Rogers (collectively, "Rogers").[2] The parties have briefed the issues presented in the motion for summary judgment extensively.[3] The Court has considered these briefs, the record, and the applicable law, and now issues its ruling. For the reasons that follow, the motion for summary judgment is **GRANTED**.

## FACTUAL BACKGROUND

This matter arises out of a motor-vehicle collision that occurred on September 13, 2013, on Interstate 12 ("I-12") in St. Tammany Parish, Louisiana.[4] On that date, Plaintiff Patricia Fenner was driving her 2008 Ford Mustang eastbound on I-12 in St. Tammany Parish.[5] Also driving eastbound on I-12 in close proximity to Fenner was William Gilfoil

---

[1] R. Doc. 73.
[2] R. Doc. 76.
[3] R. Docs. 73, 76, 79, 82.
[4] R. Doc. 73-3 at 1.
[5] R. Doc. 73-3 at 1; R. Doc. 73-2 at

in a 2008 Jeep Rubicon and Robert Rogers in a 2011 Volvo tractor-trailer.[6] The parties agree that Fenner and Rogers were traveling in the right-hand lane,[7] and Gilfoil testified in his deposition that, initially, he was traveling in the left-hand lane.[8] As the parties approached the scene of an earlier motor-vehicle collision, traffic became congested due to an immobilized vehicle that remained stalled in the left-hand lane.[9] Gilfoil has testified that, as a result, he then merged into the right-hand lane behind Fenner's vehicle and in front of the tractor-trailer driven by Rogers.[10]

Rogers testified in his deposition that Gilfoil was able to merge into the right-hand lane "without any incident."[11] Moreover, the parties agree that, after merging into the right-hand lane, Gilfoil initially maintained a distance of about "one to two car lengths" behind Fenner's vehicle.[12] The parties also agree that, at some point thereafter, Fenner began to brake due to traffic congestion and subsequently came to a complete stop.[13] It is undisputed that Gilfoil also braked and came to a complete stop behind Fenner's vehicle.[14] Rogers, however, whose tractor-trailer was positioned behind Gilfoil's vehicle in the right-hand lane, was unable to stop his tractor in time and collided with Gilfoil's vehicle, which caused Gilfoil to strike the vehicle driven by Fenner.[15]

The preceding facts are not disputed. The parties disagree, however, with respect to the ultimate cause of the collision and whether Gilfoil's lane change played a part in causing it. Rogers contends that Gilfoil, after changing lanes, came to an "abrupt stop"

---

[6] R. Doc. 73-3 at 1–2; R. Doc. 73-2 at 1.
[7] R. Doc. 73-3 at 1; R. Doc. 76 at 2. *See generally* R. Docs. 73-2, 76-3.
[8] R. Doc. 76-1 at 3 (Deposition of William Gilfoil). *See also* R. Doc. 76 at 2.
[9] R. Doc. 73-3 at 1–2; R. Doc. 76 at 2.
[10] R. Doc. 73-3 at 1–2; R. Doc. 76-1 at 2–3 (Deposition of William Gilfoil).
[11] R. Doc. 79-1 at 1 (Deposition of Robert Rogers).
[12] R. Doc. 73-2 at 1, ¶1; R. Doc. 76-3 at 1–2, ¶1. *See also* R. Doc. 73-4 at 3 (Deposition of William Gilfoil).
[13] R. Doc. 73-2 at 1, ¶3; R. Doc. 76-3 at 2, ¶3.
[14] R. Doc. 73-2 at 1, ¶¶4–5; R. Doc. 76-3 at 2–3, ¶¶4–5.
[15] R. Doc. 73-2 at 1, ¶¶4–5; R. Doc. 76-3 at 2 –3, ¶¶4–5.

behind Fenner's vehicle, which created a sudden emergency and made it impossible for Rogers to stop his tractor before striking Gilfoil's vehicle.[16] Gilfoil disagrees, noting that he came to a complete stop behind Fenner and only rear-ended Fenner because Rogers rear-ended him.[17] As a result, Gilfoil has moved for summary judgment, arguing he is not liable for causing the accident under Louisiana law.[18] It is this motion for summary judgment that it is presently before the Court.

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] "An issue is material if its resolution could affect the outcome of the action."[20] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[21] All reasonable inferences are drawn in favor of the non-moving party.[22] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[23]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would

---

[16] R. Doc. 76-3 at 2, ¶4.
[17] R. Doc. 73-2 at 1, ¶¶4–5. *See also* R. Doc. 73-3 at 4–5.
[18] R. Doc. 73.
[19] Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[20] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[21] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[22] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[23] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[24] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[25]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, as in this case, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[26] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[27] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[28] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose

---

[24] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[25] *Celotex*, 477 U.S. at 322–24.
[26] *Id.* at 331–32 (Brennan, J., dissenting).
[27] *See id.* at 332.
[28] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[29]

## LAW AND ANALYSIS

This is a diversity case[30] in which the Court must apply substantive Louisiana state law.[31] Gilfoil argues that, under the Louisiana law of negligence, Rogers is presumed to be at fault for the collision because Rogers was the "following motorist" in a rear-end collision.[32] According to Gilfoil, because Rogers is presumed to be at fault, and because Rogers has failed to rebut that presumption, Gilfoil cannot be deemed at fault for the collision and should be dismissed from the case at this summary judgment stage.[33]

As recognized in *Johnson v. Magitt*, "[t]he law has established a rebuttable presumption that a following motorist who strikes a preceding motorist from the rear has breached the standard of conduct prescribed by LSA-R.S. 32:81(A) and is therefore liable for the accident."[34]

> The rule is based on the premise that a following motorist whose vehicle rear-ends a preceding motorist either has failed in his responsibility to maintain a sharp lookout or has followed at a distance from the preceding vehicle which is insufficient to allow him to stop safely under normal circumstances.[35]

The following motorist may rebut the presumption of negligence in one of two ways. First, the following motorist may rebut the presumption by "proving that he had his

---

[29] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[30] R. Doc. 1 at 1–2, 10.
[31] *See, e.g., Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 517 (5th Cir. 2015) (citing *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 775 F.3d 242, 248 (5th Cir. 2014)).
[32] R. Doc. 73-3 at 2–3 (citing La. R.S. § 32:81(A); *Johnson v. Magitt*, 12-0200, p. 3 (La. App. 1 Cir. 9/21/12), 111 So. 3d 11, 12; *Lirette v. Ott*, 562 So. 2d 1067 (La. App. 4 Cir. 1990)).
[33] *See generally* R. Doc. 76.
[34] *Johnson*, 111 So. 3d at 12.
[35] *Id.* at 12–13.

vehicle under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances."[36] Second, the following motorist may "avoid liability by proving that the driver of the lead vehicle negligently created a hazard that he could not reasonably avoid,"[37] which is known as the sudden-emergency doctrine.[38]

In light of the foregoing, the Court finds that Rogers, as the following motorist, is presumed to be at fault for the collision in this case, and it is his burden to rebut that presumption in either of the two ways mentioned above. Rogers attempts to do so by arguing that Gilfoil abruptly merged into the right-hand lane and braked, which created a sudden emergency and caused, or at least contributed to, the multi-vehicle collision.[39] For the reasons that follow, the Court disagrees with Rogers and grants summary judgment in favor of Gilfoil.

As an initial matter, it is unclear whether the sudden-emergency doctrine is even applicable in this case. In *Leblanc v. Bouzon*, the Louisiana Third Circuit Court of Appeal affirmed the trial court's grant of summary judgment to the driver of the middle vehicle involved in a three-vehicle, rear-end collision.[40] In that case, Linda Leblanc, Abbie Norris, and Brody Bouzon were driving their vehicles in congested traffic on Johnson Street in Lafayette, Louisiana.[41] All three were driving in the right-hand lane as they approached a red traffic signal.[42] Leblanc brought her vehicle to a stop due to the red light, as did Norris immediately behind Leblanc.[43] Bouzon, however, the driver of the third and final vehicle,

---

[36] *Id.* at 13 (citing *Taylor v. Voigtlander*, 36,670, p. 4 (La. App. 2 Cir. 12/11/02), 833 So. 2d 1204, 1206).
[37] *Id.* (citing *Daigle v. Mumphrey*, 96-1891, pp. 2–3 (La. App. 4 Cir. 3/12/97), 691 So. 2d 260, 262).
[38] *See, e.g., Harbin v. Ward*, 13-1620, p. 5 (La. App. 1 Cir. May 29, 2014), 147 So. 3d 213, 219.
[39] R. Doc. 76 at 2–3, 5–6; R. Doc. 82 at 1–2, 4.
[40] *Leblanc v. Bouzan*, 14-1041, p. 8 (La. App. 3 Cir. 3/4/15), 159 So. 3d 1144, 1149.
[41] *Id.* at 1145.
[42] *Id.*
[43] *Id.*

was unable to stop and, as a result, rear-ended Norris's vehicle, which pushed it into Leblanc's vehicle.[44] Leblanc sued both Norris and Bouzon for negligence under Louisiana law.[45] Norris—the driver of the middle vehicle—then moved for summary judgment, arguing Bouzon was presumptively at fault as the "following motorist" and had failed to rebut that presumption.[46] The trial court agreed, dismissing Norris from the suit with prejudice.[47] Bouzon appealed, however, contending Norris created a sudden emergency and was partly at fault for the collision.[48] The appellate court affirmed Norris's summary judgment dismissal, relying on a Louisiana Second Circuit Court of Appeal decision which held that, "where other vehicles are able to stop behind the lead vehicle, the driver of the last vehicle that precipitates the chain reaction collision is negligent."[49] The court further ruled that, because Leblanc and Norris were able to stop their vehicles in time and avoid a collision, "the sudden emergency doctrine is inapplicable."[50]

The *Leblanc* decision is factually similar to the instant case. Both cases involve three-vehicle, rear-end collisions.[51] Both cases also involve motions for summary judgment filed by the drivers of the middle vehicles based upon the presumptive negligence of the following motorists.[52] In the present case, as in *Leblanc*, the driver of the middle vehicle—here, Gilfoil—was able to stop his vehicle and, at least initially, avoid a collision with the lead vehicle.[53] The facts are undisputed in this case that Gilfoil did not rear-end Fenner until Rogers rear-ended Gilfoil; that is, Fenner was struck from behind

---

[44] *Id.*
[45] *Id.* at 1145–46.
[46] *Id.*
[47] *Id.* at 1146.
[48] *Id.*
[49] *Id.* at 1147–48 (citing *Ebarb v. Matlock*, 46,243, p.8 (La. App. 2 Cir. 5/18/11), 69 So. 3d 516, 521).
[50] *Id.* at 1149.
[51] *Compare id.* at 1145–46, *with* R. Doc. 73-3 at 1–2.
[52] *Compare Leblanc*, 159 So. 3d at 1146, *with* R. Doc. 73.
[53] R. Doc. 73-2 at 1, ¶¶4–5; R. Doc. 76-3 at 2–3, ¶¶4–5.

only once, not twice.[54] The *Leblanc* decision holds the sudden-emergency doctrine does not apply to circumstances such as this, where the driver of the middle vehicle was able to come to a complete stop behind the lead vehicle, only to be rear-ended by a following motorist and then pushed into the lead vehicle.[55] This Court agrees with the reasoning espoused in *Leblanc* and finds that the sudden-emergency doctrine is not applicable in light of the facts of this case.

Moreover, even if the sudden-emergency doctrine did apply to this case, Rogers has pointed to no evidence to show Gilfoil created a sudden emergency or is otherwise at fault, even in part, for the collision. The undisputed facts establish that Gilfoil merged into the right-hand lane in front of Rogers without incident and that, after merging, Gilfoil maintained a distance of about "one to two car lengths" behind Fenner's vehicle.[56] Moreover, Gilfoil and Fenner both testified that Gilfoil was able to come to a complete stop behind Fenner's vehicle,[57] which Rogers does not dispute.[58] It was only after Gilfoil safely merged into the right-hand lane, maintained a safe distance, and came to a complete stop that the accident occurred. Based on these facts, the Court finds that Gilfoil did not create a sudden emergency in this case, and Rogers has failed to otherwise rebut the presumption of negligence. As a result, Gilfoil's motion for summary judgment must be granted.

---

[54] R. Doc. 73-2 at 1, ¶¶4–5; R. Doc. 76-3 at 2–3, ¶¶4–5.

[55] *See generally Leblanc*, 159 So. 3d 1144.

[56] R. Doc. 79-1 at 1 (Deposition of Robert Rogers). *See also* R. Doc. 73-2 at 1, ¶1; R. Doc. 76-3 at 1–2, ¶1; R. Doc. 73-4 at 3 (Deposition of William Gilfoil).

[57] R. Doc. 73-3 at 4; R. Doc. 73-5 at 4 (Deposition of Patricia Fenner) ("I was hit once.") (Q: "Did you feel more than one bump at all?" A: "No."). *See also* R. Doc. 73-3 at 5; R. Doc. 73-4 at 2 (Deposition of William Gilfoil) ("And then as we approached the vehicle Ms. Fenner came to a stop and I stopped and then the truck didn't have the time to stop and it hit me and knocked me into Ms. Fenner.").

[58] R. Doc. 76-3 at 3, ¶5; R. Doc. 73-6 (Deposition of Robert Rogers) (Q: "And did [Gilfoil] come to a stop or not?" A: "I don't remember. . . . I think he did, but I don't remember.").

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment filed by Defendant William Gilfoil and the Louisiana Farm Bureau Insurance Company be and hereby is **GRANTED**.

**New Orleans, Louisiana, this 18th day of January, 2016.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**